Good morning, your honors. May it please the court, Shai Voretsky on behalf of the appellants. I'd like to focus this morning on two issues from the briefing. First, as to contract formation, Gordon entered into an arbitration agreement when he signed into the website and clicked agree after being presented with terms and conditions on the pop-up. I know the court has asked the parties today to address the Marshall case, so I'd like to discuss why that case supports our position here. Second, I'd also like to address why plaintiffs are bound by that arbitration agreement as a matter of agency law, because here, as in the Fifth Circuit's recent decision in Jackson v. WWE, Gordon acted as plaintiff's agent when the plaintiffs allowed him to show their tickets in order to be admitted to the stadium. Let me get to the nub of what gives me pause in this case and difficulty. This is a motion to compel, and it was treated as a motion for summary judgment, which is a motion usually filed in context of where there's a potential jury trial. Motions to compel, I believe, are tried by the court, just like transfer motions, jurisdictional motions, and the courts find the facts on that. It seemed to me it got the district court off on the left foot by filing a motion for summary judgment. The court should have resolved the facts, and I'll tell you what my factual problem is, and maybe you can help me. As I understand it, when Gordon went to get the tickets, he is led into Ticketmaster site. Ticketmaster site clearly indicates its functioning to take care of tickets for Commander football games. You go into that site, and if you credit your man's affidavit, you have to type in your password and your ID, and then you get to the site, and then you hit a bar, and it pops up terms and conditions with the arbitration agreement in it. That seems to be sufficient under Marshall for a contract with Ticketmaster, limited and with a plan, with an arbitration clause. But then, to get the ticket, you go further, and then the tickets appear with a code on them. You see the actual picture of the tickets, and for the terms and conditions of the tickets themselves, it has the three dots in the corner that you have to click to go to the back of the ticket. Now, if I assume that the terms and conditions that piped up first were Ticketmaster's terms and conditions, and that the terms and conditions for the ticket, as the commanders and the football teams' terms and conditions were on the back of the ticket, and you had to I'm not sure, under our Marshall opinion, that the second aspect, there was contract formation with the commanders. So it's a complex question, because I'm not sure what the facts are. The plaintiffs come in and they say they never saw any terms and conditions, but it seems to me your man demonstrated that if you go into Ticketmaster, you automatically get into it. You can't get past them. But those are Ticketmaster's terms and conditions. And so now, and not only terms and conditions, it may not be enough, because arbitration clauses have to be highlighted. So you have to be an indication there's an arbitration clause. My whole question comes into contract formation under Maryland law. And the Marshall opinion that we issued very recently, and have alerted you to, addresses that in some respect. And based on what your facts are, it seems to me, and I'll just tell you, this is very tentative. I haven't reached any conclusions, except that the court should have resolved these  I think the district court should have resolved those facts, and maybe the right approach is to send it back and let them resolve those facts. But let's assume the facts are as I say. Then it sounds to me like Ticketmaster had an arbitration clause. The commanders in the stadium did not have an arbitration clause under Marshall. I don't know if you understand where I'm coming from on that. But if you can address that and help me out on that, that would be terrific. That would advance at least my understanding. So Judge Niemeyer, let me make two points in response to that. First, if the court does think that there are factual disputes that the district court didn't properly resolve, the appropriate course here would be to vacate and remand for limited discussion. I understand. And I'm suggesting to you that may be the appropriate course after we get done today talking with both counsel. But my whole point on that is a very fundamental procedural point. This is not a summary judgment context. This is a motion to compel arbitration, and the court should have resolved facts. And if those facts have not been resolved, maybe we need them to be resolved before we can answer the questions. On the other hand, maybe we don't, because the motion to compel requires your demonstrating that there was a contract. And the question is maybe you were insufficient on that. But the whole context is highlighted by this different steps in getting the tickets. And, of course, clearly Ticketmaster is the gate to get to the commander's tickets. And the commander's tickets do have terms and conditions on the back which have the arbitration clause. But to get to that, you have to get those three dots in the upper right corner. So, Judge Niemeyer, I think that last part of your question that in order to get to the Washington commander's terms and conditions, you have to click on the three dots, that's not correct under this record. We don't need to rely on the three dots in order for there to be a contract with the  The contract with the commanders is formed as a result of the first two steps of the process. You're missing my problem. You can argue that the Ticketmaster terms and conditions apply to the commanders. I'm not sure that's so. In other words, when you go through the terms and conditions that include the arbitration, you're still on the Ticketmaster site. And you have to open up with your identification and your password on the Ticketmaster site to get on. And then the very first thing, there's a bar you hit. And according to your evidence, at that point, terms and conditions pop up. Those terms and conditions, though, are on the Ticketmaster site. They then give you the tickets after you go through that. And on the back of the tickets are the commander's terms and conditions. You're assuming that that pop-up is the commander's terms and conditions. And I'm not sure that's so. The pop-up that we're talking about appears on Joint Appendix 186. I've read it. I've seen it. But it comes right after you hit that bar at the bottom. You have to go through it to get to the tickets. So you don't actually have to go through it because even if you don't sign in, on Joint there's a hyperlink for terms of use. And the terms of use would bring up that very same pop-up that comes up after you sign in. And when you do then get that pop-up window, it's showing both the Ticketmaster site, Ticketmaster terms. Who's going to go with terms of use? In other words, Marshall requires, we're talking about the formation of contracts, of mutuality of the parties. And the idea has to be there has to be some method by which the user, the purchaser of the tickets, is directed fairly directly under Marshall to the terms and conditions, which include the arbitration clause. Completely agree. Marshall says the courts find that when a website provides clear and reasonably conspicuous notice that there are contract terms available by scrolling down or clicking a hyperlink. The user is on reasonable notice of those terms even if she never reads them. That's Marshall at 220. The sign-in screen here clearly alerted reasonable users to the existence of terms of use. What page are you on? Of Marshall 220. Pardon me? What page of Marshall, Your Honor? What are you referring to? What page of the JA? Joint Appendix 185 is where the sign-in screen is. And that sign-in screen clearly alerts reasonable users to the existence of terms of use. It makes clear that they were available by clicking the phrase terms of use. And it told users that signing in meant agreeing to those terms. A user couldn't click sign in without seeing that notice and having that opportunity to. There is a notice, but then that takes you to the terms and conditions that I understand pop up. I'm looking at 148. Well, that doesn't help. I think the terms and conditions that you want to look at, Judge Niemeyer, are at 186. And that's a pop-up window then. The sole purpose of that pop-up window is to display the terms of use.  Now, on 184, when you go on to Ticketmaster and you type in, on Ticketmaster, it requires you to have an account. And you have to have an identification and a password on Ticketmaster, right? That's correct. All right. Now, that particular sign is on page 148. And it tells you exactly what to do, right? It tells you to sign in to Ticketmaster with your Ticketmaster email and password. And when you sign in to Ticketmaster, you get 184, right? So, Judge Niemeyer, let me correct another factual, perhaps, wrinkle in this case. What you're looking at, Joint Appendix 1848, is a site for how to accept a transfer of tickets. The plaintiffs in this case are no longer arguing that the tickets were transferred to them pursuant to this. I understand, but they go, in order to get the tickets, they have to go through the Ticketmaster site, right? Well, their current theory is that Gordon bought the tickets and that he bought the tickets through a third-party site called TickPick, I believe it was called. I understand, but you're avoiding my question. I'm not trying to. 184, is that a Ticketmaster site? It says powered by Ticketmaster. Washington, yes. It is a Ticketmaster Washington football team site. So, now, what pops up on that page is 185, right? Correct. And then you say sign in, and you need to put an email and a password, right? Correct. And the email and password are for the Ticketmaster account. Yes. All right. So, you punch in 185, and what pops up is the next page, 186. Yes. Those are the terms and conditions that pop up when you're in the Ticketmaster site. But then when you go further after that, it says you agree, then you get to the ticket. And the ticket is on page 195, right? Yes. In the upper right-hand corner of the ticket, there are three dots. And then on the back of the, when you hit those three dots, 1896 and 197 pop up, right? Yes. All right. My question now, it's still not totally clear, but my question is, it looks like you're going through two sites. You're going through Ticketmaster site to get to the Washington Commander's tickets, and then the tickets themselves have the terms and conditions on the back. And the question is, which terms and conditions are applicable to which company? And I think that first one on page 186 is on the Ticketmaster site. So, Judge Niemeyer, on 186, there are the two tabs. There's the Ticketmaster tab there, and there's the Washington Commander's terms and conditions tab. The Washington Commander's terms and conditions tab, which you have to agree to in order to get past this terms of use screen, those are the same terms and conditions that appear with the three dots on the back of the ticket. Well, what comes before that page, 186? How do you get to 186? Is it type into 185? You get to 186 from 185, and you can get there one of two ways. You can either get there by signing in on 185, in which case you get that pop up, or you can get there before even signing in by clicking on the hyperlink for terms of use on 185, and that will bring up the same pop up. Either way, what you're getting there on 186 is a pop up. Well, stop on 185. Tell me what the options are there. So on 185, it's telling you, by continuing past this page, you agree to the terms of use. And you see there how terms of use is highlighted in bold red font? You can click on that terms of use before you ever sign in. You can click on that hyperlink, and it will bring up what's on 186 so that you can see the terms of use. That says nothing about an arbitration clause. I'm sorry? That says nothing about an arbitration clause. It's just terms of use, right? It says terms of use, but then when you bring up the terms of use, if you look at 186, the arbitration clause is right there on that first screen in all caps, bold, underlined. What is the next? It's very hard to read this. It says privacy policy. Of the commanders, is that what it is? No, two lines up from that. By continuing past this page, you agree to the terms of use. You see what I'm referring to there? Yeah, I do. And then if you click on terms of use, that brings up what you see on 186. Yeah. It brings up that terms of use screen with two different sets of conditions, which makes perfect sense. You're buying a ticket through Ticketmaster for a commander's game. So you've got the Ticketmaster terms of use. You also have the Washington Commander's terms and conditions. You're agreeing to both when you then click agree at the bottom of that terms of use screen. And that's what forms the arbitration agreement between Gordon and the commanders before ever getting to the back of the ticket and the three dots on 195, 196. And under the Marshall case, that's sufficient to establish both notice and assent. Notice and assent to Gordon, right? Notice and assent as to Gordon. Okay, because everything we've said so far may or may not be an argument for why you can make Gordon arbitrate, but doesn't address the district court's reason that you can't make the fans arbitrate, right? Right. So that then takes us to agency law if the court would like us to turn to that.  Could I ask just as a factual question, as a prelude to that, could you ask me, is there any evidence in the record that you offered that the fans asked Gordon to buy them the tickets before he bought them? Is there any evidence in the record to support that assertion? I don't believe that there is evidence on that. And who has the burden and emotion to compel? Well, we would have the burden, but we don't need to rely on that. There was no evidence of that in the WWE case either. The tickets there were a surprise gift. Even so, the Fifth Circuit there held that by having somebody else swipe them into the event, they were giving the agent in that case, or sorry, the principal in that case, was giving the agent the apparent authority to bind them to terms and conditions, including an arbitration clause. But that presupposes that the principal had authority to do it, right? Yeah, but I realize these start to circle back around. It presupposes that the principal entered into an agreement. Right. The WWE case assumes that, right? The WWE case assumes that there was adequate notice to the principal. I think there's a footnote that says everybody agrees in this case there was adequate notice to the principal. Right. I don't think it was disputed. I don't think it can be reasonably disputed here in light of this very standard chain of ticketing events that we have. It may not be that standard. Let's just go back briefly. I don't want to preempt Judge Heighten's question here at all. I just wanted to finish a little bit.  He went on a site called what? I believe it was TickPick. TickPick. Okay. Now, he says he went on to TickPick. The question is, could TickPick take him directly to the tickets? Could TickPick have gone through this mechanism, for instance, going on these pages 184, 185? Could it have been that TickPick went through these pages and got the tickets and then transferred them to his account? No. What happened is that after he bought the tickets, he then received a confirmation e-mail from TickPick and an e-mail from the Washington football team ticket office with a link to accept the tickets. And in order to accept those tickets, he needed to go through the sequence we've been talking about. He says he went the way he went. He didn't see any terms and conditions. That's what he says, right? In his affidavit. Well, it's also undisputed, though, that he... No, just answer my question. Didn't he say that in the record? I believe he says that, but it's also undisputed that he accepted or agreed to the terms and conditions that are on Joint Appendix 186. Show me that. His affidavit is where? I believe that... His affidavit is on 135 to 137. Does he say anywhere that he... Well, I think the key point, though, is not his affidavit, but rather that it is undisputed here that he accepted the tickets through the Joint Appendix 186 that we've been talking about. He said, the electronic tickets I possessed and my Apple wallet listed name, date, location, event, and so forth, a true correct copy attached. No terms and conditions appeared on the face of the electronic tickets, nor was there any language on the face of the tickets advising me. And on the paragraph before, he says, I logged in using my Ticketmaster account and assessed the electronic tickets, which I placed in my Apple wallet on my iPhone. He basically says he never saw terms and conditions that he had to go through. Now, my question is, is there a mechanism by which, if he went through this third party, where they could have been the ones that went through your terms and conditions and obtained the tickets and then transferred them to him? No. And, again, the record here, and if you look at the Carabajal Declaration, which is... Well, I saw that declaration, and it made a lot of sense what he said. But I also see the Declaration of Gordon, and Gordon categorically says he saw no terms and conditions. He says he didn't see the terms and conditions through those three dots. He may or may not have clicked on the three dots. He doesn't deny, and he can't deny, I don't think, that he went through this sequence of sign-ins that we're talking about on Joint Appendix 185 and 186. What if his particular servicer went through it instead of him? I don't think there's any argument to that effect, but I suppose, Judge Niemeyer, I'll take you back to where we started. Well, the reason I'm saying that is because I'm reading his affidavit here. We're on 136, and he denies everything you're saying about that. I mean, it just leads to the question of fact. How do we resolve this? I don't think he is denying the key point. If you look at Paragraph 7 on Joint Appendix 136, he says, I logged in using my Ticketmaster account and accessed the electronic tickets, which I placed in my Apple wallet and my iPhone. For all the reasons we've been discussing and that are established by the Karabahal Declaration, in order to access the electronic tickets through the Ticketmaster website, he has to go through this sequence we're talking about on Joint Appendix 185 and 186. And Joint Appendix 185 and 186 make clear, under the standard in the Marshall case, that by signing in, he was agreeing to the terms and conditions, and he expressly then clicks Agree to the terms and conditions, which included the Washington commanders. Why aren't those terms and conditions Ticketmaster's terms and conditions? I'm sorry, Your Honor? Why aren't those terms and conditions Ticketmaster's? Because on Joint Appendix 186, it clearly shows that they're both. They're the Ticketmaster terms and conditions and the Washington commanders terms and conditions. By buying tickets to a football game, he's accepting both the ticket seller's terms and conditions, Ticketmaster, and the terms and conditions of the football club and the stadium. That's what the layout of this screen clearly indicates. But to go back to your first question in this argument, Judge Niemeyer, if the court has doubts about... He says here, just in response to what you said, no terms and conditions appeared on the face of the electronic tickets, nor was there any language on the face of the tickets advising me that I should click on a link or visit the website to read terms and conditions established in the agreement. Judge Niemeyer, that's referring to the electronic tickets. The only way you get to the electronic tickets is by going through Joint Appendix 185 and 186 first. So whether or not the electronic tickets terms and conditions were... Whether or not he saw those, he had to get through these two steps, the sign-in screen on 185 and the agreement to the pop-up on 186. And that, wholly apart from the three dots on the tickets, that is where, under Marshall, a contract was formed. If the court thinks there are factual disputes to resolve about that, however, it should remand for further discovery into what exactly happened here. I don't think that's necessary, though, because I think Joint Appendix 185 and 186 clearly establish a contract. Thank you, Your Honor. Did you have your questions answered? I might get them. I'll ask later. Good morning, Your Honor. It's Robert Sokolov on behalf of the appellee. First of all, Judge Niemeyer, you asked the right questions. We were asked to address Marshall. Let me draw a couple of important things with Marshall and a few things that are different. First of all, Marshall found no arbitration. And Marshall, let's remember, started out with a big, bold arbitration thing listed. There is no such notification in this case. And contrary to what my friend just told the court, it is clear on the record that Mr. Gordon, by the way, is not one of the plaintiffs in this case. Mr. Gordon clicked on, and there were two separate terms and conditions. He clicks on the ticket master tickets. He clicks on that. He gets to where he has to. When he goes to agree, the rest is not there. He has to go through some separate steps. There is no arbitration. The argument they make, which might satisfy Marshall, the argument they make is in order to get to the tickets, you have to go through that one page that has the terms and conditions. And when you click on that one page to open it, the terms and conditions pop up and the arbitration clause is right there. And that is, of course, exactly what Mr. Gordon disagrees with. He says the terms and conditions at Ticketmaster, I'm sorry, at Washington, it disappears. It's a separate box, completely separate. There's nothing in it that suggests you're now going. He did say he went through the Ticketmaster account, and the question is where in the record is what happens when you go through the Ticketmaster account from your point of view? Well, my point of view is very simple. It goes back to the affidavit of Gordon, and Gordon is very clear. He says nothing in terms of Washington team goes ahead and tells me once I click through Ticketmaster, nothing with respect to terms and conditions involving arbitration exists anymore. And I think the importance of both Marshall, which is now this court's ruling, but more importantly, what the district court found was that it's got to be significantly more. Just any contract, any agreement, any terms are not enough to bind somebody to avoid their day in court. So far, though, we're only talking about part one of the district court's opinion, which is where the court is explaining why it is not going to grant the team's right to compel because there's this genuine dispute of fact. But I haven't heard you say anything about the second part of the court's opinion that says actually it turns out everything in part one was unnecessary because none of it matters. It's just we're not going to do it. I'm just going to ask you right up front about when I read these Maryland cases, I'm like this sounds like the exact sort of hostility to arbitration rules the Supreme Court has said over and over and over again you can't have. Well, like I don't understand how you can say a rule. Just because I'm your agent, that means I can check you into a nursing home and I can make health care decisions for you and I can do all this other incredibly consequential stuff. But what I can't do is agree to arbitrate. That, to me, sounds like an arbitration hostile rule. Okay, so let me address that. And the only reason I started with the Marshall approach is because the court asked us to address that. No, totally fair, totally fair. So what the court did here was it said on one hand it didn't find that there was sufficient evidence in front of it in which it compelled arbitration. However, as you, Honor, just pointed out, it then said, we don't even have to get to that. So another way to say it, for purposes of Part 2 of the court's opinion, we can and probably should assume for the sake of argument that Gordon would be bound because the court says irrespective of whether Gordon is bound, these folks as a matter of law are not bound. And it does so by reference to these Maryland decisions that, again, strike me as the classic sort of thing the FAA says you can't do. Well, okay, so without being pejorative or discussing, you know, how perhaps the Maryland courts don't like federal arbitration, let me suggest this. There is a logic and a very strong logic. I think the cases that the court cited to in Maryland perhaps maybe do appear to be, you know, anti-federal arbitration. But if we narrow down and come back to the facts of this case, the facts of this case are much stronger than the facts in which they made those arguments there. For example, one of the things the court pointed out is there's not even an indication that when these tickets were purchased by Gordon that he even intended to give them to the four plaintiffs in this case. So unlike the nursing home situation where clearly the people who walk in and say I'm the agent.  You know, the problem is let's take a little more friendly example. A father goes online and buys four tickets for his family, his wife and his two teenage children, and they go to the football game. Are the terms and conditions under which the father purchased them applicable to the family? Well, and I think that's the key question, Your Honor. I think. What's your answer? Well, the answer is a definite maybe, and here's why. Part of it may be, but there's a big distinction between certain terms. I don't want a distinction. I want an answer from a hypothetical, and we can go on then from there. Okay. I would argue no because the issue of terms and conditions in this case is a very significant one, and that is whether you're waiving your right to go and have your day in court. And I don't think there's any particular case in Maryland on any basis. And by the way, let's remember, Maryland law was argued at the lower court level throughout. Both sides were. So let me go back and ask another variation of Judge Niemeyer's question. So, like, let's go back pre-Internet, back when my parents, I think this literally happened when I was in high school. My parents got us tickets to the Final Four, and these were back in where they were like big old physical tickets, right? And the back of the physical ticket, I'm sure, said, you totally promised to arbitrate if something bad happens to you at Target Field or wherever this was, right? So there's a physical ticket. My parents bought it for me, and either they hand it to me right before we go through the turnstile, or they don't trust me to handle the ticket, so they scan all four of them and then we all walk through. Putting aside all of the Internet stuff, is there any doubt that in that world I was bound by the arbitration clause? So this is not purchased online. It's a physical ticket my parents bought for me that has an arbitration clause on the back of the physical ticket. I think the answer to that is, back in the day, when it's a single document, everybody was probably bound by what's on that piece of paper.  You go up to the ticket counter, and the father buys four tickets. And then he takes the four tickets and takes his family through the gate and hands the guy the four tickets, and the four walk in. Now tell me, are all four bound by the arbitration clause? I would say under those circumstances, yes. Okay, what's the theory? I'm sorry? What's the theory? I think father is buying for children. I think the theory is that there's a more likely scenario that he is acting as the principal in that scenario. I think it's a far different scenario here in which... Well, you start extending it. You start saying, okay, four friends going to a game. And one of them says, I'll get the tickets. So he goes to the ticket counter, gets the four tickets, the four friends walk in, and the guy hands the four tickets to the taker and puts them in. It seems to me that when you have people who know they're going to a game with tickets, they have basically agreed with the terms that the person who purchased the tickets... This is a big difference here, though, Your Honor, in this new brave world that we live in, unfortunately. No, forget about the electronics. I'm trying to take the hypothetical with paper tickets with the terms and conditions on the back. And the father buys the four tickets. No, the friend buys the four tickets. And the three others are standing behind him. And he pays their money. And the guy who purchased the tickets has them in his hand. They walk over to the gate, and he hands all four to the ticket taker, and all four walk in together. And my question is, you said under that circumstance all four are bound by the... Did you say that? Didn't you say that? Well, if all four walked in and the person who purchased the tickets handed them to the ticket taker, which, by the way, is exactly what happened here. Yeah, it happens all the time. Right. I don't know for arbitration purposes that that's enough. I don't know that in that instance the individuals who walk in as the guests are bound by something as serious as an arbitration clause. Well, they agreed to go to the game, and my assumption is under the reasoning of the Fifth Circuit, which seems to me not to be slighted in this case, that when somebody, this is a fact of life in America, somebody buys the tickets and then they all go. The people who are going are basically agreeing to the same thing that the ticket purchaser agreed to. And I just don't know how we get around that. If we don't get around that, imagine what's going to happen. Your Honor, that's a good question. And by the way, all of this could have been avoided. The fact of the matter is there is a simple way. If they wanted to bind both Mr. Gordon and the others, they could have very easily have had a singular click, not a double click. They could have had a singular click. Let's forget about that. That's another issue. That's about whether Gordon's bound. That's not about whether they're bound. Your question is we're assuming Gordon is bound. He sees it. He bought this for his friends, and he goes in, and according to him, he handed the tickets to the ticket taker. Right, but I'm not assuming that Gordon is bound. But I guess what I'm saying is I think the Part 2 of the district court's opinion assumes that Gordon is bound because Part 2 of the district court's opinion could be Gordon got Cadillac notice. Gordon literally, before he purchased the ticket, was like, are you sure you want, like there's a huge pop-up window, and it says are you sure you want to buy these tickets because if you buy these tickets, you're 100% agreeing to arbitrate. And Gordon clicks, yes, I want to buy these tickets. Under Part 2 of the district court's opinion, that literally doesn't matter. The fans are still not bound. And that's the part that strikes me as implausible. Well, let me address both halves of that. First of all, the facts in this case are not kind of the part I described. So that takes us a long way out of it. No, it doesn't because I think Part 2 of the district court's opinion would say even in that situation, the answer is the same. And in that regard, Your Honor, I have to say that while the examples you gave, kind of the crazy examples out here, you know, raise some concern, I do believe that it is fair, and under these circumstances, it is fair, to say that for an arbitration clause to be affected to a third party, in this case to... It's not a third party. It's a party who's going to the game and clearly authorizes or agrees to have somebody purchase the tickets, which includes in the purchase of the tickets agreeing to arbitration. But see, that's the point... Stick with the family, again. The family, the father or the mother, buys the four tickets, keeps them in his hand, hands them in. He's bound by, whether he reads it or not, it's on the back of the ticket, he's bound by the arbitration clause, terms and conditions of the ticket. It's an adhesion clause, of course. But he's bound under traditional contract principles. And I think it would turn this whole area totally upside down if we said the kids were not bound and the father was. Your Honor, let me address that two ways. First of all, I think the facts in this case are... Please stick with my hypothetical. It helps to understand the principles before we get to this case. Well, I don't disagree that you could have mayhem. You could have, God forbid, nobody, you know, is applicable to arbitration. However, the flip side of that, Your Honor, is that it could have easily been done in a way without a double-click in which... No, Stick, how is it going to be done with the family? We've got the family buying four tickets, the father buys the four tickets, and the whole family walks into the gate. He hands them tickets. Now, you say they're bound or they're not bound? They're not bound if the circumstances are exactly the same here as which the father... Please stick with the hypothetical. We have four physical tickets with an arbitration clause on the back of each. So... And the father buys the four tickets and hands them to the ticket taker. So they're not... And they walk into the gate. So I understand the hypothetical. They're not purchased through ticket... No, they're purchased at the gate, right there, ticket. There I would argue you're correct. They would be bound. Why? The difference between that... Okay, now just, yeah, what's the theory? Well, the theory is that the father was acting as the agent for the family, and right there in front of him it says, when you enter this location, you are going to be bound by arbitration. The difference here is, A, there's a big question at least as to whether... All right, the teenage boy, let's make him an adult, he's 18 years old, and he says, I didn't read any arbitration clause, and he got hurt in the stadium. Under my hypothetical, is he bound by arbitration? I would say they're more likely yes, because father is clearly acting as agent, and the ticket he was handed right there, no double click, no anything. He's on notice. We're not talking about double clicks. I wish you'd get that out of there. It's offensive to change the question. I'm sorry. The ticket itself says, right there, clearly, arbitration. There, I believe, under those dual circumstances of a more likely agency agreement, and the language being right there saying... Isn't the agency implied? The 18-year-old didn't say, I agreed. I think it's implied. It's implied, because the father bought it for them, and they know they were going to the game, and the father purchased the tickets. That's fair. All right, so now we'll do the transfer to this case. If Gordon was bound, get the clicks. If Gordon was bound contractually to arbitration, he bought those tickets for seven others also, and all seven went in, and he, under his affidavit, he's the one that put his phone there to have them clicked. I've gone to a ball game. That's exactly what you do. You put them on your phone. It's on his phone. The ticket guy clicks on each one, and they all walk in. Now, isn't he acting as the same principle for those eight? Except for we go back to the beginning, and that is... No, we're assuming he's bound. We're assuming he's bound. Well, I don't accept that assumption as being... Well, I'm asking you as a hypothetical then. So, okay, hypothetically, if he was...  Electronically, he has the eight tickets on his phone. Assuming he was bound, then the question is, is he reasonably either has authority or parent authority for these other individuals? And I would argue, no, not necessarily at all. Not at all. Father with kids may be closer. Somebody who's agreed ahead of time may be closer. The agreement comes by the fact that the one person is buying the tickets for others, and the others take the tickets and agree to go to the game under whatever arrangement they have. I don't know that... And the fact is, when somebody else is buying the tickets for you, it seems to me the only real-world pragmatic solution is that they're all bound by what's ever on that ticket. And I would argue respectfully, Your Honor, that you can't just automatically bind somebody to waive their rights and end up in arbitration because somebody else bought the ticket for you. Can I just step back and just ask you... This was my very first reaction to this case. So one of the basic principles I remember learning in property and other sort of that kind of class in law school is that you can't sell what you don't own, you can't transfer what you don't own. So let's pause it again. This question presumes that Gordon is bound. So Gordon buys four tickets, and those four tickets convey a right to enter the Washington football team then's stadium. But they also say if you want to enter the Washington football team's stadium, you have to arbitrate. We're not letting you in if you don't agree to arbitrate. Let's pause it that that's what Gordon was told, right? So Gordon buys four tickets that say, I'm allowed to go to a commander, later renamed commander's game, but I'm only allowed to go because I agree to arbitrate. So Gordon's stuck with that. It just seems weird to me that Gordon could then transfer the tickets to someone else, and then the nature of what the right they have is now different. So Gordon only has a right to go to a game subject to an agreement to arbitrate, but now these other people, by virtue of getting the tickets from Gordon, now have a right to go to the game and not arbitrate? Why doesn't that violate the you can't transfer what you don't own principle? Well, your honor, I don't disagree. It just seems weird, right? No, no, I understand the court's concern there. Like if Gordon said, I'd like to go to the game without arbitrating, they'd say, cool, no. But now the fans get to go to the game without agreeing to arbitrate? Well, your honor, if those were the facts here, but those were not the facts in all due respect, because remember, Gordon is saying, I was able to click. I am positing, as Judge Niemeyer is, for purposes of this question, that Gordon is required to arbitrate. Okay, if he's required to arbitrate. Isn't it then weird to say they get to do something better than what he got? I don't disagree with your honor if those were the facts here. All right, let's go to the facts. Gordon says, I logged in using my Ticketmaster account and accessed the electronic tickets, which I placed in my Apple wallet. That's the Ticketmaster tickets. Right. That takes you to what shows on page 184. And the very first click in order to get the tickets is you have to go through the terms and conditions. Of Ticketron. Well, have you got that picture in front of you? I do not have it right here, your honor. 184. Right, but that is the Ticketmaster. It says Washington Commander's Account Manager. Right. I'm sorry, when you say he had to click the next time, he then would have to go. Well, it says here, put in your e-mail and your password. Right here. And then it says sign in. So he clicks in, and the very next page that pops up, and he doesn't deny this, the very next page pops up, terms and conditions with the arbitration clause. And his affidavit testimony was he was able to click on, and he would have to click the second time to get what your honor is pointing to. Show me that in his affidavit. I've got it in front of me. I'm just doing this from memory at the moment, your honor. Do you have the affidavit there? I didn't bring it with me. Did you bring your brief there? Yes, your honor. You didn't bring the appendix with you? Yes, I have the appendix. Where's the appendix? I'm sorry? Do you have the appendix with you? It's on 186, your honor. I said do you have the appendix with you? Here I do not. I do not have it right here. May I make the point? Well, I can suggest to you he does not say what you just said. He then says on the tickets it doesn't tell you. On the tickets he says the electronic tickets I possessed in my Apple wallet listed the QR codes but no terms and conditions. That's accurate because he shows a picture of it. Right, and that's what I was trying to say, your honor. I know, but the paragraph before says I logged in using my Ticketmaster account and accessed the electronic tickets. And in order to log in the Ticketmaster account he does not include the pages. The defendants do include the pages. And you have to go through the terms and conditions. Of course, that's a fact and dispute because Well, why is it a dispute? That's my point. Because the court determined that it wasn't certain that what was done a year later to put that together, to put what you're looking at together, whether that was what had to be done a year earlier when Mr. Gordon bought the tickets. So that's a factual dispute, your honor, because Mr. Gordon is basically saying Who disputes it? Have you disputed it? I'd like to see your dispute of it. The way you dispute a fact is with an affidavit or testimony of some kind, right? Yes, and that was Okay, and where's the fact that you disputed that? In the Gordon affidavit, I believe. I've got it in front of me and it doesn't say that. Your honor, in all due respect, I think the Gordon position is that he was able to click through and not have to have in front of him, much like, by the way, in Marshall that says Where do you get that from? From Gordon. His affidavit? Yes. It doesn't say that. I think that's the meaning of it, your honor. If I may say, what's important about Marshall to hear is He said, this is all he says about that process. He says nothing negative. He says, I logged in using my Ticketmaster account. You have to have an ID and a password. And accessed the electronic tickets, which I placed in my Apple wallet on my iPhone. That's all he says about that process. Then he, at the next paragraph, he addresses the tickets themselves. And the tickets, as you know, have the three dots and you have to go on the back side. But I think the significance, your honor, of Marshall and what the district court found was that if you have to go through that extra step. What step? To then log into the football team's terms and conditions, which is the only place, but that's the only place the arbitration shows up. You're missing the point. When you go into Ticketmaster, and as soon as you click to open Ticketmaster, the very first thing is the terms and conditions. That's what the record shows. The terms and conditions don't require you at that point to agree to the arbitration. It's when you get to the football team's terms and conditions that you have to go through the arbitration. I think that's the distinction that we're making, and an important distinction. It would have been good if you brought your JA with you. It's not that big a document here. Because it doesn't show that. I don't mean to make excuses like my dog ate my homework, but they're sitting somewhere. I probably believe it. They're sitting somewhere on the airplane, Your Honor, when I brought my other file with me. Is that true? Yes. Well, you're excused. I'm not asking for the excuse. I think I have it memorized. I'm sorry. Your Honor, I think what's important here, if I may say in all due respect, Marshall, I think, is really clear. Marshall is telling us that if you're talking about something as important as arbitration, it can't be kind of a hide-and-seek kind of arrangement. Actually, we wrote an opinion last year explaining this, but the Supreme Court has said it again and again. Arbitration is a function of contract, and the gate to get to arbitration is first to get a contract. And if there's a contract that imposes arbitration, then the federal law says it treats it very favorably. And so the question is, is there contract formation here? And Marshall says, basically, there can be formation here, especially if you have to click through the terms and conditions to get to the tickets. And I think the undisputed evidence is you had to click through the terms and conditions to get the tickets, right? Well, that's where I disagree, Your Honor. I think he was able to... Well, that's what I want to hear, where it's disputed. Well, I believe that what Gordon is saying in his affidavit was, I was able to click on to Ticketmaster. I was able to then see the three dots up above. I was able to get my tickets without then signing a separate agreement that says I'm agreeing to the football team's terms and conditions, which included the arbitration. And I think it's very clear, Your Honor, whether we like Maryland law or not. Right now, Maryland law is that for an arbitration clause to be upheld, it's got to be something fairly significant because you're giving away a fairly significant rule. Thank you, Your Honor. Yeah, thank you. All right, Mr. Dvoretsky. So before you start, could I ask you about a question that, to me, melds Issue 1 and Issue 2 in this case? Sure. Great. Okay, so let's just pause it for purpose. I understand you have three different arguments that are noticed to Gordon, right? Three different arguments. I'm going to call the third argument the three dots argument. I want you to just pause it that I find that totally unpersuasive, as did the district court, that the three dots is not giving notice to Mr. Gordon. So if Mr. Gordon gets notice, it's via one of the other two. And let's pause it that I think you actually have a decent argument on 1 and 2. But then there's the question about how the agency works. So the hypo is this. Mr. Gordon is not their agent when he buys the tickets, but he becomes the agent at latest when he presents the tickets, like the WWE scenario. Like when you let someone scan the tickets for you, they're your agent at that point, right? But what if the only time Mr. Gordon got notice he wasn't their agent and that he only becomes? So the WWE example or the family example strikes me works fine, because let's take the classic tickets example, right, which is the moment my dad scans the ticket for me, he is in that moment my agent. And in a world in which my dad is getting notice, constructively fictional, whatever, from the back of the ticket, my dad has notice at the moment he becomes my agent, right? There's an alignment of the notice and the agency relationship. What do we do if there's a misalignment between the notice and the agency? What if at the only point Gordon got notice he's not their agent? Does that matter? And if not, why not? It doesn't matter because of how apparent authority works. But he doesn't have any apparent authority when they haven't authorized him to buy tickets from them. No, but he has apparent authority when he's going into the stadium. And at that point where he is representing himself to the commanders as their agent, and when they are standing there allowing him to swipe them in on his phone as their agent, then he has apparent authority to act on their behalf. And this is what the Fifth Circuit dealt with in Jackson. That apparent authority includes whatever is necessary or proper to achieve the principal's objective. The principal's objective there is to be admitted to the game on a ticket that resides on Gordon's phone. And let's say, and so just if we're thinking of this in apparent authority, the way that cashes out then, if the fans afterwards are like, what are you talking about? You agreed to something? Like, that's a dispute between the fans and Gordon? Like, why did you go and agree to something for me that I didn't want you to agree for and you never should have agreed with? Correct, because the way apparent authority works, again, under the restatement, is that notice to the agent is imputed to the principal. But what if he's not an agent when he gets the notice? He gets, at the moment, I'm hypothesizing that when he got notice he wasn't an agent. Even if you hypothesize that, it doesn't matter because he's the same person. The only way that he acquired the rights to enter the stadium was by agreeing to that arbitration clause. At that point, he is on notice that this ticket, which was purchased for the benefit of some third party, he wasn't buying seven seats for himself. This ticket, which was purchased for the benefit of somebody, is subject to that restriction. Then at the gate, that somebody is these plaintiffs. They're the ones who are allowing him to hold himself out as their agent and who, again, get them admitted. And again, so if he, in fact, went totally rogue and violent, let's imagine the worst facts for you, right? I want to go to this game, but do not under any circumstances agree to waive my right to go to court. Like the strongest possible version. You would say that in that situation, they might have a lawsuit against him. Correct, but from the commander's point of view and the way apparent authority works, apparent authority is judged from the perspective of what the commanders would reasonably think. And the commanders would reasonably think in that situation that if he's swiping them in, that he has the power to act for them. And again, industry custom matters here too. Industry custom, Fifth Circuit explains this, informs whether the third party's understanding of an agent's authority is reasonable. And here, it's not only industry custom in the Internet age where people freely transfer electronic tickets and swipe in others on their phone. This goes back to the printed tickets from the final four in high school. There too, if one person swipes in a stack of tickets for others, the industry custom is that it's understood that they can bind the other people to the terms on those tickets. And that carries through to the Internet age just as much. Can I ask one question, please? Yes, please. Would it make any difference if the person purchased the tickets as a gift? Four tickets went through the process he went through. Purchased those tickets and just gave them to a random three other people and just with an airdrop, you know, young people are talking about airdrop your ticket. That's pretty good, wasn't it? You know, you airdrop it to them and say, have your way. Would those people, those strangers go in, would they be bound by arbitration? So I think that goes to the question of whether there's contract formation with them. And I think the way it works is you actually, I don't think you can just airdrop the ticket to them. I think the only way that they could acquire those tickets would be to go through a transfer process that takes us back to something like Joint Appendix 185 and 186, where they would have to agree to the terms themselves. Exclusively, once you buy the tickets on your phone download, no one else can get those tickets. You can't just airdrop it or send them a screenshot or something like that. The only way to do it, the way this actually works, I think, would be to transfer them through the Ticketmaster site or its equivalent, and that would then cause the recipients of those tickets to have to go through the same sort of site. That's the equivalent, if you take Judge Gregory's hypothetical, let's have physical tickets. He bought ten World Series tickets, and he gave nine of them out to friends, just mailed them as gifts, whether they liked it or not, and they go to the game. They're bound. Well, of course, the back of the ticket has the... Those folks are all bound. They're bound because they have the back of the ticket. They're bound because they have the back of the ticket. So your argument is electronically they're brought back to the physical ticket because they have to go through Ticketmaster. Right. And those fans would also be bound, at least on a third-party beneficiary or an estoppel kind of theory, that by going into the game and accepting the benefits of admission to the game, they can't then disclaim the conditions on the back of the ticket. So it's all kind of fiction anyway in terms of the notice and... The law of it. Okay. All right. Thank you.
judges: Paul V. Niemeyer, Roger L. Gregory, Toby J. Heytens